UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
KENNETH BOSS,

                        07 Civ. 2113 (SHS)
           Plaintiff,          ECF CASE

    -against-                **COMPLAINT AND DEMAND**
                               **FOR JURY TRIAL**

RAYMOND W. KELLY, as Police Commissioner
Of the City of New York, THE POLICE DEPARTMENT
OF THE CITY OF NEW YORK, and THE CITY OF
NEW YORK,

                 Defendants.
-------------------------------------------------------------------X

       Plaintiff KENNETH BOSS ("Officer Boss"), by his attorneys, Edward W. Hayes,

P.C., for his Complaint alleges as follows:

### INTRODUCTION

       1.     This is a civil rights action seeking a declaratory judgment, an injunction,

compensatory damages, and punitive damages for Defendants' continuing violation of

Plaintiff's rights, privileges and immunities under the United States Constitution and the

Civil Rights Act of 1871, 42 U.S.C. Section 1983.

       2.     Plaintiff is a New York City police officer who has been on involuntary

disciplinary duty status since 1999, when he was involved in the highly publicized and

controversial police shooting of Amadou Diallo. Despite the facts that he was absolved of

criminal and administrative liability and that he recently served his country with

distinction as a Marine in the most dangerous precincts of Iraq, Plaintiff has been

effectively terminated by Defendants as a full duty, armed police officer, and remains a

stigmatized pariah, relegated to non-enforcement limbo with no hope of restoration, let alone advantageous transfer or advancement.

3.     In December 2006, nearly eight years after the Diallo tragedy, Plaintiff asked Defendants to restore him to full, armed police duty upon his return from a tour of duty as an heroic and decorated infantryman with the United States Marine Corps in Iraq. Ignoring compelling proof that he had served bravely and effectively in service of his country, Defendants returned him to the same humiliating disciplinary duty status he had endured prior to his mobilization.  His stigmatization and relegation to unarmed, career limbo, without hope of restoration to police duties, let alone opportunities for advancement, without due process  is a clear violation of property and liberty rights accorded him by the United States Constitution.

## THE PARTIES

4.     Plaintiff KENNETH BOSS is a citizen of the United States and resided in Ronkonkoma, Suffolk County, State of New York at the time of the events giving rise to the complaint.

5.     Defendant City of New York ("City") is a municipality organized and existing under the laws of the State of New York.  At all times relevant hereto, Defendant City, acting through the Police Department of the City of New York ("NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and conducted the appointment, training, and supervision of NYPD personnel.  In addition, at all relevant times, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and of the State of New York.

6.     At all times relevant hereto, Defendant Raymond W. Kelly was Police Commissioner of the City of New York, acting within the scope of his employment as such.

7.     At all times relevant hereto, Defendants were and are acting under color of law.

## JURISDICTION

8.     This court has subject matter jurisdiction over the plaintiffs' claims pursuant to 28 U.S.C. §§ 1331, 1343(3-4).

9.     Venue is proper pursuant to 28 U.S.C. § 1391(b) in that plaintiff's claims arise in the Southern District of New York.

10.     Jurisdiction to grant declaratory judgment is conferred by 28 U.S.C. §§ 2201, 2202. Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure. An award of costs and attorneys fees is authorized pursuant to 42 U.S.C. § 1988.

## FACTS

11.     Plaintiff was appointed to the New York City Transit Police Department on January 13, 1992 at the age of 20.  He served as a Transit patrol officer until 1994, when he accepted a lateral transfer to the NYPD.  He was thereafter assigned to patrol in the 28 and 75 Precincts.

12.     In the spring of 1998, Plaintiff was selected through an application and interview process to serve in the Department's elite Street Crime Unit, a plainclothes detail tasked with ridding the City's streets of illegal guns.

3

13.     By February 1999 Plaintiff had compiled an impressive record of gun seizures and arrests that earned him more than 40 medals, superior performance evaluations, and awards from community and civic organizations for outstanding service. He envisioned future transfer to an investigative assignment that would earn him the prestigious gold shield of a New York City Police Detective.

14.     On the night of February 4, 1999, Plaintiff was assigned with three other officers to patrol in an unmarked car in the Bronx, looking for a serial rapist, when he became involved in the fatal shooting of Amadou Diallo, a 22-year-old African street vendor whose black wallet was mistaken for a gun by one of Plaintiff's partners. Plaintiff, who was still in the car when others fired the first shots, discharged his weapon only after he heard gunfire, saw muzzle flashes, and rushed to aid a fellow officer who was on the ground.

15.     The incident received nationwide media attention and became the focus of protestors who viewed the tragedy as emblematic of pervasive police brutality. Plaintiff's guns were removed immediately following the incident, and he was temporarily assigned to the Special Operations Division on full duty status.

16.     Within weeks, Plaintiff's supervisor told him that because full duty officers must be armed, he should report to the Department firing range to be furnished with a replacement weapon. When news of his and his colleagues' re-arming reached the news media, there was a public outcry. Plaintiff was told that if he voluntarily surrendered his weapon, he would be taken off suspension within 48 hours. He turned in his gun, but before he could be restored, he was indicted by a state grand jury and suspended for the maximum 30 days allowed by New York's Civil Service Law. After

4

his suspension was lifted, he was returned to duty on modified assignment, a temporary duty status reserved for officers facing discipline or criminal charges.

17.     The state grand jury returned indictments against all four officers involved in the incident, charging murder, reckless endangerment, manslaughter and criminally negligent homicide.  The avalanche of negative publicity generated by the incident forced removal of the trial to Albany County in order to accord the officers a fair and unbiased jury.

18.     On February 25, 2000, an Albany jury found all four officers Not Guilty.

19.     On April 26, 2001, the NYPD Firearms Discharge Review Board concluded that there had been no violations of Department firearms guidelines. Nonetheless, the Board recommended that Plaintiff receive "retraining in tactics re: cover and concealment" and "Non-enforcement Duty Status; to be reviewed by First Deputy Commissioner in 12 months."

20.     Adopting the Review Board's finding of no violations, Defendant Kelly pursued no disciplinary charges. Pursuant to the Administrative Code of the City of New York and the New York State Civil Service Law, New York City police officers may not be fired or punished with suspensions, fines or loss of vacation without full due process hearings.  No retraining has ever been conducted.

21.     On April 3, 2002, Plaintiff wrote to Defendant Kelly, asking to be restored to full duty.  On June 10, 2002, the Department's Deputy Commissioner-Legal Matters, through one of his assistants, responded by letter that Plaintiff's request had been denied but that the Department "will revisit this decision next April."

22.     Plaintiff was physically assigned to the Emergency Service Unit's training school and repair shop at Floyd Bennett Field, Brooklyn.  He had no regular duties and spent most of his time waiting to be assigned to police duties that never materialized.  He had no gun and no shield.  He carried an identification card with the words "RESTRICTED" and "NO FIREARMS" emblazoned thereon.  He could not be promoted or advantageously transferred.

23.     In stark contrast to his pre-February 4, 1999 status, he could earn no overtime and accumulated 12 fewer "chart" (a category of vacation day negotiated by union contract) days per year.  He was regarded as a pariah and was forced to endure regular taunts because of his duty status.

24.     On August 5, 2002, Plaintiff commenced a state proceeding pursuant to Article 78 of the Civil Practice Law and Rules, seeking restoration to full duty on the grounds that Defendant Kelly's determination to continue him indefinitely on modified assignment, a temporary duty status reserved for officers facing disciplinary charges, was arbitrary and capricious and in excess of the Commissioner's legal authority.

25.     Defendants contended that maintaining Plaintiff indefinitely on modified assignment without his gun was within Defendant Kelly's discretion. They filed with the Court a sworn affidavit of Defendant Kelly that was the substantial equivalent of a professional obituary for Plaintiff.

26.     In this conclusory and lethally stigmatizing document, Defendant Kelly acknowledged that Plaintiff had been cleared of wrongdoing both criminally and internally, but went on to speculate, without supporting facts, that if Plaintiff were returned to full, armed duty, he not only would be unable to perform his duties effectively

but also that he would endanger fellow officers. As further justification for his decision, Defendant Kelly predicted that if Plaintiff were restored to full armed duty and employed force, "he and the Department would be inappropriately subjected to pre-judgment." The clear import of these words is a false assertion that Plaintiff is an incompetent and dangerous man.

25.     In a written opinion dated April 14, 2004, which was affirmed by the Appellate Division, First Department a year later, a state judge, agreeing with Plaintiff that "modified assignment" was indeed a disciplinary duty status, ordered that Plaintiff be removed from modified assignment, but held that it was within Defendant Kelly's discretion not to restore Plaintiff's gun.  The NYPD subsequently changed Plaintiff's duty status to "Full Duty No Gun" but this change was in name only as everything else about his assignment remained the same.

27.     In April 2006, Plaintiff took military leave from the NYPD to deploy to Iraq with 1st Battalion, 25th Marines.  During his tour of active duty, which involved seven months in Iraq as part of a platoon that conducted mobile combat patrols in volatile Anbar Province, which includes the city of Fallujah, Plaintiff distinguished himself as a model Marine and was promoted to Corporal. According to his platoon commander, plaintiff was nominated for a Navy Achievement Medal with Combat Distinguishing Device for his "professional conduct under duress" as well as his "calm decision making and presence of mind."

28.     In one incident, plaintiff was struck at close range by a 9mm pistol fired by an insurgent.  Plaintiff, who was wearing body armor, was knocked to the ground, but

managed to return accurate fire and take tactical action that prevented further injury to the other Marines in his vehicle.

29.     In a second incident a month later, plaintiff and another Marine intercepted a vehicle full of arms and ammunition in the crowded market area of Fallujah, disrupting an insurgent cell suspected of several Iraqi police kidnappings.

30.     As a result of his exemplary conduct in Iraq, Plaintiff has been awarded the Navy Achievement Medal with Combat "V" for valor.  Additionally, Plaintiff's Platoon Commander, Captain Gary K. Koon, stated to Commissioner Kelly in a letter dated November 21, 2006 that plaintiff "was, without hesitation, the best Marine among a platoon of outstanding Marines."

31.     Plaintiff's Company Commander, Major Craig R. Abele wrote, "The truth is that [Plaintiff] is the exact kind of person that you want at your side during times of friction and chaos.  He was able to clearly think and act within the rules of engagement and he always made the correct decision."

32.     Upon his return to the United States and discharge from active duty, Plaintiff, through his attorney, sent a letter to the NYPD Deputy Commissioner Legal Matters requesting a conference regarding Plaintiff's duty status.

31.     On December 1, 2006, without any conference, hearing or written determination, Plaintiff was returned to the same assignment and duty status he had prior to his military leave. His duties are essentially clerical, and his status has earned him the mocking moniker "Kenny No-Gun" among his colleagues.

32.     Plaintiff is still on *de facto* modified assignment, in violation of State Supreme Court's order.  His request for a conference or hearing on his disciplinary duty status has been ignored.

### First Cause of Action

33.     Plaintiff repeats and realleges the facts as set forth in paragraphs "1" through "32" supra with the same force and effect as if set forth in full herein.

34.     At all times herein relevant, Defendants were acting under color of state law.

35.     The Defendants' ongoing punishment of Plaintiff in the form of maintaining him permanently on disciplinary duty status has violated and continues to violate his rights under the United States Constitution by depriving him of constitutionally protected property rights he has in his employment as a police officer without providing him the due process of law mandated by the Fourteenth Amendment.

36.     Without any due process whatsoever, Defendants continue to punish him by consigning him permanently to a duty category ordinarily reserved for allegedly low performing, corrupt and brutal officers with pending charges, as well as  stigmatization and lost hope to revive his career at any time in the future. Although he continues to be employed by Defendant NYPD, he has been effectively terminated from his position as a full duty police officer.

37.     By reason of the foregoing, Defendants violated 18 U.S.C. § 1983.

38.     As a result of Defendants' deprivation of plaintiff's rights, plaintiff is entitled to injunctive and declaratory relief.

39.     As a result of Defendants' deprivation of plaintiff's rights, plaintiff has suffered financial loss and emotional trauma and is entitled to an award of compensatory damages.

40.     Because Defendants' conduct toward plaintiff was malicious and/or done with reckless indifference to plaintiff's federally-protected rights, plaintiff is entitled to an award of punitive damages.

### Second Cause of Action

41.     Plaintiff repeats and realleges the facts as set forth in paragraphs "1" through "40" supra with the same force and effect as if set forth in full herein.

42.     At all times relevant, Defendant Kelly was acting under color of state law.

43.     In violation of his constitutionally protected liberty rights, Defendant Kelly falsely and wrongfully stigmatizes him by standing by and behaving consistent with his sworn affidavit that brands Plaintiff as incompetent and dangerous on the authority of sheer speculation, to Plaintiff's great detriment.

44.     By reason of the foregoing, Defendant Kelly violated 18 U.S.C. § 1983.

45.     As a result of Defendant Kelly's deprivation of plaintiff's rights, plaintiff has suffered financial loss and emotional trauma and is entitled to an award of compensatory damages.

46.     Because Defendant Kelly's conduct toward plaintiff was malicious and/or done with reckless indifference to plaintiff's federally-protected rights, plaintiff is entitled to an award of punitive damages.

WHEREFORE, the plaintiffs request that this court:

1.     Assume jurisdiction over this matter;

10

2.      Issue a declaratory judgment that the defendants' policy and practice of maintaining Plaintiff on a duty status reserved for officers facing disciplinary charges violates Plaintiff's rights under the Fourteenth Amendment to the United States Constitution;

3.      Issue injunctive relief enjoining defendants from continuing to keep Plaintiff on disciplinary duty status and ordering defendants to return Plaintiff to full, armed police duty status;

4.      Award compensatory damages to plaintiff Kenneth Boss;

5.      Award punitive damages to plaintiff Kenneth Boss;

6.      Award Plaintiff attorneys' fees and costs; and

7.      Grant any other relief the court deems appropriate.

Dated: New York, New York
           March 12, 2007


_____

Edward W. Hayes, P.C.
Rae Downes Koshetz, Of Counsel
Attorneys for Plaintiff
515 Madison Avenue, 30th Floor
New York, New York 10022
212-644-0303