UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

KENNETH BOSS,

                 Plaintiff,

    -against-                        07 Civ. 2113 (SHS)

RAYMOND W. KELLY, as Police Commissioner
of the City of New York, THE POLICE
DEPARTMENT OF THE CITY OF NEW YORK,      OPINION & ORDER
and THE CITY OF NEW YORK,

                Defendants.

-----------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

      This lawsuit constitutes a second attempt by New York City Police Officer Kenneth Boss to convince a court to override the decision made by NYPD Commissioner Raymond W. Kelly to restrict Officer Boss's use of a firearm while on duty.  Kelly placed this restriction on Boss because of his involvement in a highly publicized and racially charged incident in 1999 in which Boss and three other police officers fired a large number of gunshots in the fatal shooting of Amadou Diallo.  As explained below, the result in the present case is no different than when Boss advanced similar arguments in the course of an Article 78 proceeding he brought in the New York state courts. Because Boss has failed to state a valid claim for deprivation of any constitutionally protected property or liberty interest without due process, the Complaint must be dismissed.

## I.      Background

The facts alleged in the Complaint, which are accepted as true for the purposes of this motion, are as follows.  Plaintiff Kenneth Boss is a police officer employed by the New York City Police Department ("NYPD").  (Compl. ¶ 11.)  On February 4, 1999, Boss was one of four officers involved in the fatal shooting of Amadou Diallo, an unarmed twenty-two year old man of African descent.  (Compl. ¶ 14.)  The incident received nationwide media attention and triggered protests related to the issue of police brutality.  (Compl. ¶ 15.)

Following the incident, plaintiff surrendered his weapon to the NYPD.  (Compl. ¶ 15.)  Shortly thereafter, the four officers involved in the shooting of Diallo, including Boss, were indicted by a grand jury for murder, reckless endangerment, manslaughter and criminally negligent homicide.  (Compl. ¶ 17.)  Upon his indictment, the NYPD suspended Boss for thirty days and then returned him to duty on "modified assignment," which is a duty status reserved for officers involved in disciplinary proceedings or criminal charges.  (Compl. ¶ 16.)

On February 25, 2000, after a trial, a jury found Boss not guilty of all charges.  (Compl. ¶ 18.)  Subsequently, the NYPD Firearms Discharge Review Board concluded that Boss had not violated any NYPD firearms guideline, and recommended that plaintiff's duty status be reviewed in one year.  (Compl. ¶ 19.)

One year later – in April 2002 – Boss wrote to Commissioner Kelly asking that he be returned to full duty, but that request was denied.  (Compl. ¶ 21.)  Boss was then

assigned to the Emergency Service Unit's training school and repair shop, where he remained on "modified assignment" with no gun.  (Compl. ¶ 22.)

In August 2002, Boss commenced a proceeding in New York Supreme Court, New York County, pursuant to Article 78 of the New York Civil Practice Law and Rules, seeking restoration to full duty with a gun.  He alleged in that petition that maintaining him on "modified assignment" without a gun was arbitrary and capricious and in excess of Commissioner Kelly's legal authority.  (Compl. ¶ 24.)  In his affidavit submitted in opposition to Boss's Article 78 petition, Commissioner Kelly explained the reasons behind his decision to maintain Boss on "modified assignment" without a gun.  (Compl. ¶ 25.)  Specifically, according to the Complaint, Kelly wrote that in light of the controversy surrounding the Diallo shooting and subsequent criminal trial, if Boss were restored to full duty with a gun, and ever had to take any police action involving the use of force, "he and the Department would be inappropriately subjected to pre-judgment."   (Compl. ¶ 26.)  This, according to Boss, "brands Plaintiff as incompetent and dangerous on the authority of sheer speculation."  (Compl. ¶ 43.)

On April 14, 2004, Justice Michael Stallman of the New York Supreme Court granted in part and denied in part Boss's Article 78 petition in a written opinion.  Boss v. Kelly, 3 Misc. 3d 936, 776 N.Y.S.2d 772 (N.Y. Sup. Ct. 2004).  Justice Stallman wrote that the police commissioner "exercises broad discretion to manage the Police Department, necessarily including deployment of personnel and their assignment to appropriate duties."  Id. at 938.  Nevertheless, Justice Stallman concluded that the Patrol Guide – which sets forth personnel rules governing the NYPD – permitted "modified

assignment" status only when there is misconduct or disciplinary action anticipated.  <u>Id.</u> at 941.  Here, no disciplinary action was anticipated by the time the Article 78 was commenced, and the criminal charges had already been tried to verdict.  <u>Id.</u> at 938, 942. Thus, the court concluded that Boss could not be kept on "modified assignment," although he could be assigned to a variety of other non-full duty assignments.  <u>Id.</u> at 942. "It is clear," however, the court wrote, "that petitioner's demand for full duty status is a demand for restoration of his gun."  <u>Id.</u> at 940.  As to that, the court concluded that the Patrol Guide did not require that Boss's gun had to be restored, and that the decision not to restore the gun was within Commissioner Kelly's "broad discretion to manage the Police Department."  <u>Id.</u> at 938, 940.   Thus, the court granted the petition in part and remanded the matter to the Commissioner for further action consistent with the opinion. <u>Id.</u> at 943.

The Appellate Division, First Department, later affirmed that determination, writing that "[t]he Commissioner's determination not to return the petitioner to full duty status does not violate departmental rules, . . . and the decision not to restore his weapon was within the Commissioner's rationally exercised discretion.  The Commissioner's stated reasons for denying restoration to full duty are neither irrational nor arbitrary and capricious."  <u>Boss v. Kelly</u>, 17 A.D. 3d 269, 270, 793 N.Y.S.2d 423 (1st Dep't 2005) (internal citation omitted).  Shortly thereafter, the NYPD changed Boss's duty status to "Full Duty No Gun."  (Compl. ¶ 25.)

In April 2006, Boss took military leave from the NYPD and deployed to Iraq as a marine, where he saw combat.  (Compl. ¶ 27.)  Upon his later discharge from active

military duty and return to the NYPD, Boss requested that he be restored to full duty <u>with</u> a gun (Compl. ¶ 32); he was, however, given the same assignment and duty status that he had prior to his military leave: "Full Duty No Gun." (Compl. ¶ 31.) As a result, according to the Complaint, his status has earned him the "mocking moniker 'Kenny No-Gun' among his colleagues." (<u>Id.</u>)

On March 12, 2007, Boss initiated the present action pursuant to 42 U.S.C. § 1983, alleging in Count 1 that the City of New York, the NYPD, and Commissioner Kelly violated his property rights without due process by virtue of his duty assignment and in Count 2 that Commissioner Kelly violated his liberty rights without due process by filing an affidavit in the Article 78 proceeding that effectively "brands Plaintiff as incompetent and dangerous on the authority of sheer speculation." (Compl. ¶ 43.) Boss seeks injunctive and declaratory relief and compensatory and punitive damages. Defendants now move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## II.     Discussion

### A.     <u>Legal Standard</u>

When reviewing a Rule 12(b)(6) motion to dismiss, the Court assumes the truth of all facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. <u>See</u> <u>Cleveland v. Caplaw Enters.</u>, 448 F.3d 518, 521 (2d Cir. 2006). The Court's task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." <u>Levitt v. Bear Stearns & Co.</u>, 340 F.3d 94, 101 (2d Cir. 2003) (internal quotation marks omitted). At

least until May 21 of this year – when the U.S. Supreme Court decided <u>Bell Atlantic</u> <u>Corp. v. Twombly</u>, 550 U.S. __, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007) – a court could grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>EEOC v. Staten Island Sav. Bank</u>, 207 F.3d 144, 148 (2d Cir. 2000) (quoting <u>Conley v. Gibson</u>, 335 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

In the <u>Bell Atlantic</u> opinion, the Supreme Court declared that the "no set of facts" language had "earned its retirement." <u>Bell Atlantic</u>, 127 S. Ct. at 1969.   The Supreme Court went on to state that a motion to dismiss will be granted only if the plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 1974. This articulation does not constitute a "universal standard of heightened fact pleading," but rather a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." <u>Iqbal v. Hasty</u>, __ F.3d __, 2007 U.S. App. LEXIS 13911, at *35 (2d Cir. June 14, 2007).  Under the standard as phrased in either <u>Conley</u> or <u>Bell</u> <u>Atlantic</u>, defendants' motion should be granted.

B.    <u>Boss's Constitutional Due Process Claims Must be Dismissed</u>.

The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution provides that no state shall "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV.  In order to allege a violation of Fourteenth Amendment due process rights pursuant to 42 U.S.C. § 1983, a plaintiff must first

establish that he has suffered a deprivation of a constitutionally protected liberty interest or property interest.  See Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) (holding limited by Paul v. Davis, 424 U.S. 693, 696, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976)); Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980); Finley v. Giacobbe, 79 F.3d 1285, 1296 (2d Cir. 1996); Federico v. Board of Educ., 955 F. Supp. 194, 198-99 (S.D.N.Y. 1997).

If a constitutionally-protected interest is identified, the plaintiff must then show that he was deprived of that interest without the process that was due.  See Narumanchi v. Board of Trustees, 850 F.2d 70, 72 (1988).  "The second step of the analysis thus asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided."  Id.  As explained below, both of plaintiff's claims fail as a matter of law because: 1) Boss cannot establish that he has a constitutional property interest in carrying a gun during the course of his employment with the NYPD; and 2) Boss's liberty interest claim – which arises out of Commissioner Kelly's affidavit in the Article 78 proceeding – is defeated by the judicial proceedings privilege, as defendant Kelly had absolute immunity for that affidavit.

> 1.   *Boss Has Established No Property Interest in Carrying a Gun During the Course of His Employment for the NYPD, and Therefore Claim 1 Must Be Dismissed.*

Boss alleges in Claim 1 that even though Boss's duty status is officially "Full Duty No Gun," (Compl. ¶ 25), without a gun he effectively is still on "modified assignment," a form of "disciplinary duty status" (Compl. ¶ 35).  By "maintaining him permanently on disciplinary duty status," he alleges all three defendants have

"deprive[ed] him of constitutionally protected property rights . . . without providing him with the due process of law mandated by the Fourteenth Amendment."  (Compl. ¶ 35.)

However, to establish a property interest, a plaintiff must have "more than an abstract need or desire for [the property], []he must, instead, have a legitimate claim of entitlement to it under state or federal law in order to state a § 1983 claim."  <u>Finley</u>, 79 F.3d at 1296 (citing <u>Roth</u>, 408 U.S. at 577).  Moreover, the U.S. Supreme Court has repeatedly "recognize[d] that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion."  <u>Town of Castle Rock v. Gonzales</u>, 545 U.S. 748, 756, 125 S. Ct. 2796, 162 L. Ed. 2d 658 (2005) (citing <u>Kentucky Dep't of Corrections v. Thompson</u>, 490 U.S. 454, 462-463, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989)).

Although federal law controls what process is due, property interests themselves "'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" <u>Velez v. Levy</u>, 401 F.3d 75, 85 (2d Cir. 2005) (quoting <u>Roth</u>, 408 U.S. at 577); <u>see also</u> <u>Martz v. Incorporated Vill. of Valley Stream</u>, 22 F.3d 26, 29-30 (2d Cir. 1994).

Here, applying New York law, Boss cannot plausibly plead a "legitimate claim of entitlement," <u>Finley</u>, 79 F.3d at 1296, to possess a firearm while on duty because "[i]t is well settled that the possession of a handgun license is a privilege, not a right, which is subject to the broad discretion of the New York City Police Commissioner." <u>Papaioannou v. Kelly</u>, 14 A.D.3d 459, 460, 788 N.Y.S.2d 378 (1st Dep't 2005)  (citing

Matter of Kaplan v Bratton, 249 A.D.2d 199, 201, 673 N.Y.S.2d 66 (1st Dep't 1998) and

Matter of Fondacaro v Kelly, 234 A.D.2d 173, 177, 652 N.Y.S.2d 604 (1st Dep't 1996));

accord Sewell v. New York, 182 A.D.2d 469, 472, 583 N.Y.S.2d 255 (1st Dep't 1992).

Thus, because defendants may "grant or deny" Boss's access to a firearm "in their

discretion," Town of Castle Rock, 545 U.S. at 756, he has failed to state a plausible claim

that he has a property interest in possessing a gun while on duty.

In response, plaintiff points out that the New York state cases cited above arise

from the Police Commissioner's decision to restrict a civilian's access to firearms, as

opposed to his decision to restrict a police officer's access to firearms as part of his

employment.  However, plaintiff does not cite any legal authority suggesting that the

Commissioner has less discretion in granting the right to carry firearms to police officers

– employees over whom he may exercise considerable control within delimited discretion

– than he does when granting that right to civilians.

To the contrary, both judicial decisions in Boss's own Article 78 proceeding

explain that the Commissioner has considerable discretion in deciding whether an officer

may carry a firearm.  Justice Stallman noted that "[t]he Patrol Guide does not give an

officer an absolute right to have a firearm under any and all circumstances," and therefore

concluded that the decision "whether or not to restore an officer's firearm appears to be

within the discretion of the officer's superiors, and ultimately, that of the Commissioner,

rationally exercised."  Boss, 3 Misc. 3d at 940.  Similarly, the Appellate Division, First

Department held that "the decision not to restore his weapon was within the

Commissioner's rationally exercised discretion."  Boss, 17 A.D.3d at 270.

Moreover, other courts have held that "[i]n determining the fitness of candidates, the Police Department, as the agency charged with the responsibility, is afforded 'wide discretion,' which is to be sustained unless clearly abused." City of New York v. N.Y. City Civ. Serv. Comm'n, 20 A.D.3d 347, 348 (1st Dep't 2005); see also Matter of Bruder v. Kelly, N.Y.L.J., Aug. 6, 2007, at 18 (N.Y. Sup. Ct. Jul. 31, 2007) (deferring to the discretion of the NYPD Commissioner regarding the reinstatement of a police officer involved in another highly-publicized and racially-charged police brutality case "in view of the importance of the public trust in police officers"). Thus, because defendants had "wide discretion" in deciding to place Boss on "Full Duty No Gun" status, Boss has no constitutional property interest in possessing a gun while on duty, and Claim 1 is dismissed with prejudice.

2.   *Commissioner Kelly's Affidavit Was Protected By Absolute Immunity, and Therefore Claim 2 Must Be Dismissed.*

Boss contends in Claim 2 that Commissioner Kelly violated Boss's constitutional liberty interests by allegedly defaming Boss in an affidavit that was submitted to the state court in connection with his prior Article 78 proceedings. (Compl. ¶ 43.) In this affidavit, Kelly provided the state court with his opinion as to Boss's competence to serve as an armed police officer, as well as to Boss's potential dangerousness to his fellow officers and to the community. (See Compl. ¶¶ 25-26, 43.) Specifically, he wrote that in light of the controversy surrounding the Diallo shooting and subsequent criminal trial, if Boss ever had to use a gun while on duty, "he and the Department would be inappropriately subjected to pre-judgment." (Compl. ¶ 26.) According to Boss, the

affidavit was a "conclusory and legally stigmatizing document" which was "the substantial equivalent of a professional obituary for Plaintiff."  (Compl. ¶¶ 25, 26.)

Boss's liberty interest claim must "meet a 'stigma-plus' standard, which demands that the plaintiff[] establish 1) that [he] [was] defamed; and 2) that the defamation occurred in the course of the termination of governmental employment or was coupled with a deprivation of a legal right or status."  Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002) (citing Easton v. Sundram, 947 F.2d 1011, 1016 (2d Cir. 1991)). "When the state . . . publicly charges that [an employee] acted dishonestly or immorally, due process guarantees the employee an opportunity to defend [his] 'good name, reputation, honor and integrity.'"  Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 630 (2d Cir. 1996) (citing Roth, 408 U.S. at 573).

For purposes of Boss's section 1983 liberty interest claim, this Court looks to New York's substantive state law regarding defamation.  See Pisani v. Westchester County Health Care Corp., 424 F. Supp. 2d 710, 718 (S.D.N.Y. 2006) ("Establishing defamation in the § 1983 context is no different than under New York State law.").  The New York Court of Appeals has clearly held that statements made in the course of legal proceedings are absolutely privileged.  Park Knoll Associates v. Schmidt, 59 N.Y.2d 205, 209, 464 N.Y.S.2d 424, 451 N.E.2d 182 (1983) ("a witness is immune from suit for defamatory remarks pertinent to a judicial proceeding"); see also Mosesson v. Jacob D. Fuchsberg Law Firm, 257 A.D.2d 381, 382 (1st Dep't 1999) ("The Court of Appeals long ago established that a statement made in the course of legal proceedings is absolutely privileged if it is at all pertinent to the litigation."), app. denied, 93 N.Y.2d 808 (1999).

Here, because Commissioner Kelly possessed absolute privilege when he submitted the affidavit to the state court in the course of Boss's Article 78 proceedings, and because Kelly's statements in that affidavit were directly relevant to those proceedings – they set forth his reasons for assigning Boss to duty without a gun – Boss's defamation claim should be dismissed.

Apparently realizing that Commissioner Kelly's actual affidavit cannot serve as the basis for Boss's defamation claim, plaintiff points out that his Complaint alleges that Kelly violated Boss's liberty interests not by submitting the affidavit itself, but by "standing by and behaving consistent with his sworn affidavit." (Compl. ¶ 43.) However, the Court finds unpersuasive Boss's attempt to reclassify Kelly's privileged affidavit as either conduct or distinct speech because he did not at some later point withdraw or disavow the affidavit. Moreover, the portion of the Complaint describing this second cause of action does not allege any defamatory statements or conduct other than the affidavit submitted by Commissioner Kelly.[1] (See Compl. ¶¶ 41-46.) Thus, Boss's attempted distinction is meaningless and does not change the fact that his liberty interest claim is based on a privileged affidavit that the Commissioner submitted as part of a legal proceeding. Accordingly, Claim 2 is dismissed with prejudice.

---

[1] In Boss's memorandum in opposition to this motion, he attempts to shift the basis of Claim 2 from Kelly's affidavit to the defendants' decision to print the words "Restricted" and "No Firearms" on Boss's NYPD identification card. However, even if this Court were to look beyond the fact that Boss failed to plead in the Complaint that these two statements on his identification card were the basis of Claim 2, see Compl. ¶¶ 41-46, that claim would still fail because truth is an absolute defense to defamation. See Guccione v. Hustler Magazine, Inc., 800 F.2d 298, 301 (2d Cir. 1986) (applying New York law). Here, plaintiff himself acknowledges that he is restricted insofar as he is not allowed to carry a firearm, and therefore any statement communicating those two accurate facts cannot as a matter of law serve as the basis for a defamation claim.

## III.    Conclusion

Because Boss has failed to state a valid claim for deprivation of any

constitutionally protected property or liberty interest without due process, defendants'

motion to dismiss the Complaint is granted with prejudice.

Dated: New York, New York
       August 23, 2007

SO ORDERED:

Sidney H. Stein, U.S.D.J.

13